IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| EMANUELLA NKEM NNADOZIE, et al., | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Civil Action No. RDB-14-2694 |
| | * | |
| GENESIS HEALTHCARE | | |
| CORPORATION, et al., | * | |
| | | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Emanuella Nkem Nnadozie ("Nnadozie"), Perpetua Ezeh ("Ezeh"), and Sunday Aina ("Aina") (collectively, "plaintiffs") have filed an eleven count complaint against their former employers alleging discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a) based on a series of events which ultimately resulted in their respective terminations from employment at the Patapsco Valley Center,[1] a skilled nursing center located in Randallstown, Maryland.[2]

Now pending before this Court is defendants' Genesis Eldercare Network Services, Inc. and 9109 Liberty Road Operations, LLC's (collectively, "defendants") Motion for

---

[1] The Patapsco Valley Center is managed by defendant Genesis Eldercare Network Service, Inc.  Plaintiffs were employed by 9109 Liberty Road Operations, LLC.  (ECF No. 33-1 at 1, 18.)

[2] While there are common features to all three plaintiffs' allegations (notably, the identity of defendants and the alleged discrimination on the basis of national origin), Plaintiffs proceed on an individual basis, as separate facts give rise to each plaintiff's allegations.

Summary Judgment (ECF No. 33) ("Defendants' Motion").[3]  The parties' submissions have

been reviewed, and no hearing is necessary.[4]  *See* Local Rule 105.6 (D. Md. 2016).  For the

reasons stated below, Defendants' Motion is GRANTED, and judgment shall be

ENTERED in favor of defendants on all counts.[5]

## BACKGROUND

In ruling on a Motion for Summary Judgment, the Court reviews the facts and all

reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550

U.S. 372, 378 (2007); *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Patapsco Valley Center ("PVC") is a comprehensive long term care center located in

Baltimore County, Maryland, which offers a variety of services, including long term geriatric

care, Alzheimer's care, orthopedic rehabilitation, and dialysis services.  (ECF No. 33-1 at ¶

1.)  PVC is managed by defendant Genesis Eldercare Network Service, Inc.  ("Genesis

Eldercare").  Plaintiffs were employed by 9109 Liberty Road Operations, LLC.  (ECF No.

33-1 at 1, 18.)  In 2010, PVC's regulator, the Maryland Department of Health and Mental

Hygiene ("DHMH"), imposed a civil monetary penalty on PVC based on certain deficiencies

---

[3] While four corporate defendants were named in the Complaint, plaintiffs were employed by defendant 9109 Liberty Road Operations, LLC <u>only</u>.  *See* ECF No. 33-1 at 97.  Defendant Genesis Eldercare managed PVC. In their opposition to Defendants' Motion, plaintiffs consent to the dismissal of defendants Genesis Healthcare Corporation and Genesis Health Care, LLC.  (ECF No. 65-2 at 93.)  Accordingly, all claims against defendants Genesis Healthcare Corporation and Genesis Health Care, LLC are DISMISSED WITH PREJUDICE.

[4] While plaintiffs' Motion for Extension of Time to File Response (ECF No. 54) and Motion for Leave to File Excess Pages (ECF No. 58) are administratively pending, plaintiffs subsequently filed their ninety-four (94) page brief on October 4, 2016.  (ECF No. 65.)  The Court has considered all of plaintiffs' submissions in rendering this decision.  In light of this result, however, plaintiffs' Motions for Extension of Time and for Leave to File Excess Pages (ECF Nos. 54 and 58) are DENIED AS MOOT.

[5] In light of the result reached herein, Defendants' Motion to Sever Plaintiffs' Respective Claims (ECF No. 40) is DENIED AS MOOT.

found at the center.  (ECF No. 33-1 at ¶ 5.)  In response, in November 2010, PVC installed new management at the facility in order to impose more strict discipline on employees to avoid future civil penalties.  (*Id.* at ¶¶ 6-9.)  Among the new personnel were the new Administrator, Mary Hochradel, and the new Director of Nursing, Denise Zimmerman.  (*Id.* at ¶¶ 10-11.)

### Nnadozie

Plaintiff Emanuella Nkem Nnadozie, born in Sierra Leone and raised in Nigeria, began working as a nurse at PVC in September 2009.  (Nnadozie Dep. Tr. 54, ECF No. 33-5.)  Nnadozie had previously worked at another comprehensive care center, the Homewood Center, also managed by defendant Genesis Eldercare.  (*Id.* at 86-92.)  During Nnadozie's employment at the Homewood Center, she was given a performance progress report which indicated that her work "[n]eeds improvement."  (*Id.* at 97-98.)  Nnadozie then requested transfer to PVC, where she began working as a Unit Manager/Assistant Director of Nursing ("ADON").  (*Id.* at 100-105.)

In the spring of 2010, Nnadozie went on maternity leave, but eventually returned to work at PVC in September 2010.  (Nnadozie Dep. Tr. 132, ECF No. 33-5.)  Shortly after her return, Nnadozie was issued an individual Performance Improvement Plan ("PIP") notifying her how to improve her work performance.  (*Id.* at 167-74.)  On November 4, 2010, Nnadozie was involved in a yelling incident with Senior ADON Evita Thompson, an African-American.  (Young Decl., Ex. G, ECF No. 33-9.)  Several co-workers witnessed the incident.  (*Id.*)

After Denise Zimmerman began working at PVC in November 2010, PVC management continued to complain of Nnadozie's work performance. (Dezurn Decl., Ex. E, ECF No. 33-4.)   Zimmerman notified Nnadozie that she would be required to ensure that personnel working under Nnadozie's supervision complied with PVC's patient care and recordkeeping protocols. (*Id.* at Ex. F.)   Nnadozie alleges that Zimmerman had developed a list of employees of African origin whom Zimmerman had targeted for Nnadozie to discipline. (Nnadozie Dep. Tr. 309-10, 314-16, ECF No. 33-5.)

Other changes at the center led to further tensions between Nnadozie and PVC in 2011.   First, Nnadozie asserts that Zimmerman discriminated against her by declining to support Nnadozie's application for a leadership position at PVC in January 2011. (Nnadozie Dep. Tr. 234-37, ECF No. 33-5.)     Shortly thereafter, Zimmerman notified Nnadozie and similarly situated ADONs that they were expected to arrive at work at 7:00 a.m. on a daily basis in order to see their respective subordinate night, day, and evening shift employees. (*Id.* at 271-75.)   Nnadozie requested to be excused from the 7:00 a.m. arrival rule, but PVC management promptly denied this request. (*Id.* at 262-65.)   In addition, Nnadozie was assigned responsibility for an additional nursing unit, bringing the total number of residents under Nnadozie's care to approximately 50 or 60. (*Id.* at 375-77.)   Nnadozie acknowledged that this number of residents under care is roughly equal to that assigned to other ADONs. (*Id.*)   Tensions peaked in late January 2011, when Nnadozie was involved in a dispute over

patient care with PVC's medical director, Dr. Levinson, and another physician.[6]  (*Id.* at 389-418.)

Following these and other minor incidents, Zimmerman issued Nnadozie a PIP on February 1, 2011.  (Nnadozie Dep. Ex. 22, ECF No. 33-5.)  This PIP notified Nnadozie that it was the "Final Written Warning" she would receive prior to termination.  (*Id.*)  On February 4, 2011, Nnadozie sent PVC management a written rebuttal to the PIP, along with a letter of resignation.  (*Id.*, Ex. 23.)

Nnadozie filed an Intake Questionnaire with the EEOC on May 9, 2011, alleging discrimination on the basis of race and national origin.  (ECF No. 60-18.)  The EEOC undertook an investigation based on the Intake Questionaire.  *See* ECF No. 60-21. Following the investigation, Nnadozie filed her formal Charge of Discrimination on April 5, 2012.  (ECF No. 60-23.)  The Charge cites the imposition of additional work duties, scheduling changes, certain statements by Zimmerman and Hochradel, and defendants' refusal to respond to Nnadozie's complaints as the basis for the Charge.  (*Id.*)

**Ezeh**

Plaintiff Perpetua Ezeh, born in Africa, began working at PVC in April 2010, after having worked for a separate Genesis entity, Genesis Staffing, LLC.  (Ezeh Dep. Tr. 28, 61, ECF No. 33-15.)  Ezeh worked as a Unit ADON on PVC's dialysis unit.  (*Id.* at 67-8.)  PVC management began to complain of Ezeh's work performance shortly after her arrival at the center, issuing Ezeh a PIP.  (*Id.* at 89-101.)  Complaints regarding Ezeh's performance

---

[6] While Nnadozie's recommended course of medical treatment was ultimately vindicated, the incident involved questions of authority and compliance with PVC's protocols.  (*Id.*)

persisted into 2011, resulting in Ezeh being issued another PIP.  (Hochradel Dep. Tr. 80-5, ECF No. 33-13.)

Following the PIP, Ezeh sent an email to defendants' Human Resources Manager, Lee Ann Young, complaining of several workplace requirements and conditions.  (Ezeh Dep. Tr., Ex. 13, ECF No. 33-15.)  Ezeh also complained that Denise Zimmerman spoke to her inappropriately and made certain comments regarding there being "too many Nigerians" both in her class at Baltimore City Community College, where Zimmerman worked as a teacher, and at PVC.  (*Id.*)  Ms. Young states that she investigated Ezeh's complaint, but did not find any basis to find that she singled out Ezeh on the basis of her national origin. (Young Dep. Tr. 201-09, ECF No. 33-12.)

At the same time, Ezeh's performance issues continued, resulting in defendants' issuance of a Management Performance Appraisal to Ezeh in June 2011.  (Ezeh Dep. Tr., Ex. 14, ECF No. 33-15.)  Among the performance issues identified in the Performance Appraisal was Ezeh's refusal to report for work at 7:00 a.m. daily.  (*Id.*)  During a meeting to discuss the Performance Appraisal, Ezeh confirmed her refusal to report to work at that time unless another employee, Evita Thompson, also reported at that time.[7]  (*Id.* at 166-67.)

While PVC management was assessing how to address Ezeh's performance issues, Ezeh was involved in a patient care incident in which a patient with Hepatitis C bit and/or

---

[7] It does not appear that PVC required Thompson, who held a different position, to report to work on the same schedule as Ezeh and the other ADONs.

scratched Ezeh.  (Ezeh Dep. Tr. 191-95, ECF No. 33-15.)  The incident caused Ezeh great stress, and she chose to go on FMLA leave beginning in July 2011.[8]  (*Id.*, Ex. 18.)

On the same day that Ezeh went on medical leave, she contacted the Genesis Corporate Hotline to complain again of Zimmerman's treatment of her.  (Young Dep. Tr. 212-13, ECF No. 33-12.)   Ezeh also submitted a letter to Genesis complaining of "persecution and inequitable treatment[] based on color, race, national origin and age." (Hochradel Dep., Ex. 7, ECF No. 33-13.)

Following her medical leave, Zimmerman, Hochradel, and Young met with Ezeh to notify her that once she returned to work, she would be required to report at 7:00 a.m. (Ezeh Dep. Tr. 212-16, ECF No. 33-15.)   Instead of accepting this requirement and returning to work, Ezeh indicated by letter her intention to return to her previous employer, Genesis Staffing, LLC, and resigned from her position at PVC in October 2011.  (*Id.*, Ex. 21.)

While Ezeh attempted to return to work for Genesis Staffing, the company declined to re-hire Ezeh on the basis that she had violated the company's attendance policy during her previous tenure with Genesis Staffing.  (Mooney Decl. ¶ 4, ECF No. 33-16.)  Ezeh then sought reinstatement of her position at PVC, but, having indicated her refusal to abide by the 7:00 a.m. arrival directive, PVC declined to re-hire Ezeh.  (Ezeh Dep., Ex. 22, ECF No. 33-15.)

On February 4, 2012, Ezeh filed an EEOC Charge of Discrimination alleging national origin discrimination and retaliation.  (Ezeh Dep., Ex. 25, ECF No. 33-15.)

---

[8] There is no allegation that defendants violated Ezeh's rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

**Aina**

Plaintiff Sunday Aina, born in Nigeria, began working as a geriatric nursing assistant ("GNA") at PVC in February 2009.  (Aina Dep. Tr. 9, 26-29, ECF No. 33-20.)  As a GNA, Aina was directly responsible for patient care, including bathing, transport, and monitoring of residents' physical conditions.  (*Id.*, Ex. 4.)

Beginning in the first month of his employment at PVC and on several subsequent instances, PVC management notified Aina of deficiencies in his work performance and the quality of care he provided to residents.  (Aina Dep. Ex.'s 5, 7, 8, 9, 10, ECF No. 33-20.)

In April 2011, Aina submitted a request for approximately 30 days of vacation in order to travel to Africa to marry.  (Aina Decl., ECF No. 60-25 at ¶ 2.)  Mary Hochradel denied Aina's request, stating that the length of time requested was excessive.  (Hochradel Dep. Tr. 302-08, ECF No. 33-13.)  Aina interpreted this decision as discriminatory on the basis of his national origin.  (Aina Dep. Tr. 163-64, ECF No. 33-20.)

On June 16, 2011, Aina was issued a PIP, noted as a "Final Written Warning," based on a resident's complaints that Aina neglected to provide proper care to the resident. (Hochradel Dep., Ex. 27, ECF No. 33-13.)  The PIP also entailed a three-day suspension without pay.  (*Id.*)  Aina disputes the resident's allegations of neglect.  (Aina Dep. Tr. 116-26, ECF No. 33-20.)  Following the issuance of the PIP, Aina submitted an Intake Questionnaire with the EEOC alleging discrimination on the basis of national origin and complaining of the three day unpaid suspension.  (Aina Dep., Ex. 18, ECF No. 33-20.)

In November 2011, Aina was ultimately terminated from his position after PVC determined that Aina had failed to report bruising on the face of a resident under Aina's

care.  (Aina Dep. Tr. 172-87, ECF No. 33-20.)  Aina asserts that he was instructed not to notify the nurses of the resident's bruising because state inspectors were in the building at the time.  (*Id.* at 170-71.)

While Aina had previously submitted an EEOC Intake Questionnaire, it was not until several months after Aina's termination that he filed his formal EEOC Charge of Discrimination, again alleging national origin discrimination.  (*Id.*, Ex. 19.)  While filed subsequent to his termination, the Charge does not allege discrimination in his termination. (*Id.*)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'"  *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)).  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718

F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  As this Court has explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

**I.    All Plaintiffs' Claims Pursuant to 42 U.S.C. § 1981**

All eleven counts set forth in the Complaint purport to be brought pursuant to 42 U.S.C. § 1981.  (ECF No. 1.)  "Section 1981 prohibits discrimination on the basis of race, but it 'does not bar discrimination purely on the basis of national origin.'" *Akinjide v. Univ. of Maryland E. Shore*, DKC 09-2595, 2011 WL 4899999, at *7 (D. Md. Oct. 13, 2011) (quoting *Schouten v. CSX Transp., Inc.*, 58 F.Supp.2d 614, 617 (E.D.Pa.1999)).  *See Saint Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).  "Although 'race' may be 'construed ... broadly for purposes of § 1981,' if 'a plaintiff's allegations reference only his place of origin and do not focus on specific ethnic characteristics associated with that place of origin, the broad construction of race under § 1981 does not apply.'" *Gallego v.*

10

*Gaylord Nat. Hotel*, RWT 13-CV-007, 2014 WL 4441489, at *2 (D. Md. Sept. 8, 2014) (quoting *Akinjide*, 2011 WL 48999999 at *8).

In this case, plaintiffs' allegations of discrimination are expressly based on their national origin as "Africans" and/or "Nigerians," and not on any specific ethnic characteristic which "might suggest that applying the broad definition of race is appropriate in this case." *Quraishi v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, CCB-13-10, 2013 WL 2370449, at *2 (D. Md. May 30, 2013). *See, e.g.*, ECF No. 1 at ¶¶ 73-74 ("Indeed, on multiple occasions beginning in December 2010, Nnadozie made explicit complaints to these Genesis HR reps …that Africans were being discriminated against.  She also objected to writing up the listed African employees, to Zimmerman, noting that they were all from Africa."); ¶ 173 ("Aina returned to work and Hochradel stated to him ... 'Sunday you are smart, you were this close from being fired; because we have too many Nigerians [and] you better be careful.'").  Accordingly, all plaintiffs' claims brought pursuant to 42 U.S.C. § 1981 fail as a matter of law, and defendants are entitled to summary judgment thereon.

## II.   Plaintiff Nnadozie's Claims Pursuant to Title VII

### A.  Timeliness / Exhaustion of Administrative Remedies (Counts I – VI)

As this Court has explained, a plaintiff in a federal employment discrimination action cannot file suit until she has exhausted the available administrative remedies by filing an administrative charge with the EEOC or an authorized state agency. *Johnson v. United Parcel Serv., Inc.*, RDB-14-4003, 2015 WL 4040419, at *6 (D. Md. June 30, 2015); 42 U.S.C. § 2000e-5(e)-(f).  The exhaustion requirement ensures that the charged party receives notice of the claims it faces. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  A subsequent

lawsuit thus must limit its claims to those included in the administrative charge, unless the non-exhausted claim is "reasonably related" to the claims described in the administrative charge. *Evans v. Technologies Applications & Servs. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). *See also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013).

Title VII establishes two potential limitations periods within which a charge of discrimination must be filed with the EEOC. *Edelman v. Lynchburg Coll.*, 228 F.3d 503, 506 (4th Cir. 2000).   The general limitations period is 180 days after the alleged unlawful employment practice. *Id.*   If, however, state law proscribes the alleged employment practice and the charge is first filed with a state deferral agency, then the limitations period is extended to 300 days. *Id.  See also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998).  Maryland is a "deferral state" in which the 300-day limitations period applies. *See, e.g., Prelich v. Medical Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2001).   Accordingly, a plaintiff in Maryland has 300 days to file a charge with the EEOC.   Moreover, "[t]imeliness requirements for an action alleging employment discrimination are to be strictly enforced." *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587, 597 (D. Md. 2000).

In this case, plaintiff Nnadozie worked for defendants until February 4, 2011, when she submitted her letter of resignation.  (Nnadozie Dep. Tr. 436, ECF No. 33-5.)   In her resignation letter, plaintiff Nnadozie notified defendants that her last day of work would be March 7, 2011.  (*Id.* at 438.)   Upon receipt of Nnadozie's letter, defendants responded by letter indicating that while Nnadozie would be paid through March 7, 2011, she should not return to work.   (*Id.* at 442-43.)   Thus, the latest date on which Nnadozie worked at

defendants' facility was February 4, 2011, and the latest day for which she was paid was March 7, 2011.

Defendants argue that because Nnadoie did not file her EEOC Charge until April 5, 2012—more than 300 days after the last incidence of discrimination—it is untimely and Nnadozie failed to exhaust the available administrative remedies.  (ECF No. 33-1 at 55.)

In opposition, Nnadozie appears to argue that her May 9, 2011 EEOC Intake Questionnaire should be treated as an EEOC Charge, and that her April 5, 2012 Charge as an amendment thereto.  (ECF No. 65-2.)

"The Supreme Court has held that, where certain criteria are satisfied, documents such as 'Intake Questionnaires' may be considered 'charges' within the meaning of the ADEA." *Brown v. Target, Inc.*, ELH-14-00950, 2015 WL 2452617, at *6 (D. Md. May 20, 2015) (citing *Federal Express Corp. v. Holowecki,* 552 U.S. 389, 394, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008)).  In *Holowecki*, the Court determined that a plaintiff's filing of an Intake Questionnaire, coupled with a request for agency action, satisfied the ADEA's requirement that a charge be timely filed.  Courts have since extended *Holowecki* in the context of employment discrimination under Title VII.  *See, e.g., Brown*, 2015 WL 2452617; *Grice v. Baltimore Cnty.*, JFM 07–01701, 2008 WL 4849322, at *4 n. 3 (D. Md. Nov. 5, 2008), *aff'd,* 354 F. App'x 742 (4th Cir. 2009).

The record before this Court reflects that Nnadozie zealously pursued her claims with the EEOC in the time between her filing of the Intake Questionnaire and the April 2012 Charge.  (ECF No. 60-22.)  Crucially, the EEOC then undertook an investigation based on Nnadozie's Intake Questionnaire. *See Brown*, 2015 WL 2452617 at *6.  On this

basis, the Court declines to find that plaintiff failed to exhaust the available administrative remedies. As this Court has explained:

> the Fourth Circuit has also cautioned that [the exhaustion] requirement should not become a 'tripwire for hapless plaintiffs' and is not intended to be an 'insurmountable barrier [ ] to litigation' resulting from 'overly technical concerns.' *Sydnor v. Fairfax Cnty., Va.,* 681 F.3d 591, 594 (4th Cir.2012). Thus, '[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.'" *Id.* (quoting *Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 406, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008)).

*Maynor v. Mt. Washington Pediatric Hosp.*, 93 F. Supp. 3d 434, 437–38 (D. Md. 2015).[9]

Accordingly, the Court will not grant summary judgment on this basis.[10]

## B. Hostile Work Environment (Count II)

### 1. Discriminatory Hostile Work Environment

In Count II, Nnadozie alleges that she was subjected to a hostile work environment based on her national origin. (ECF No. 1 at ¶¶ 242-249.) The thrust of Nnadozie's allegation is that defendants created a hostile, discriminatory work environment by pressuring her to discipline employees with African names and/or of African national origins. (ECF No. 65-2 at 58-64.)

Defendants argue that there is no evidence that Nnadozie was pressured to discipline African employees on the basis of their national origin, and that any discipline which she was

---

[9] While not dispositive of the issue, the Court observes that defendants did not move to dismiss Nnadozie's claims on this basis, and, moreover, that defendants did not respond to plaintiff's argument on this point in their Reply brief. *See* ECF No. 71.

[10] Similarly, defendants argue that the scope of Nnadozie's claims should be limited on account of her failure to check the box for retaliation on her Charge form. (ECF No. 33-1 at 56.) The Charge's clear reference to retaliation, however, undermines defendants' position. (ECF No. 60-20 at 2.) Accordingly, Nnadozie's retaliation claims are not foreclosed on the basis that she failed to check the box for retaliation on her charge form.

expected to enforce was based on those employees' failure to satisfy their work obligations. (ECF No. 33-1 at 63-65.)   Citing authority, defendants further assert that "Nnadozie's hostile work environment allegations amount to nothing more than a 'long list of trivial incidents is no more a hostile work environment than a pile of feathers is a crushing weight.'" (*Id.* at 66) (quoting *Baird v. Gotbaum*, 792 F.3d 166, 172 (D.C. Cir. 2015).)

"In order to establish a *prima facie* case of hostile work environment harassment, a plaintiff must show: (1) that she was subjected to unwelcome conduct; (2) the unwelcome conduct was based on sex, race, color, national origin, or religion; (3) it was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis exists for imputing liability to the employer." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 612 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). *See Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006); *Diggs v. Bd. of Educ. of Baltimore Cty.*, RDB-14-715, 2015 WL 5604278, at *13 (D. Md. Sept. 23, 2015), *aff'd sub nom. Diggs v. Baltimore Cty. Pub. Sch.*, 654 F. App'x 131 (4th Cir. 2016).   Whether an environment is hostile or abusive must be determined by evaluating the totality of the circumstances. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In making that determination, the Court applies a subjective and objective test wherein "a plaintiff must demonstrate not only that he subjectively perceived his workplace as hostile, but also that a reasonable person would perceive ... that it was objectively hostile." *Fox v. GMC,* 247 F.3d 169, 178 (4th Cir. 2001) (internal citations omitted). In determining whether the harassing conduct was objectively severe or pervasive, "[r]elevant considerations may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 184 (4th Cir. 2001) (internal quotation omitted).

In this case, Nnadozie fails to present a triable issue of fact on her claim that defendants created a hostile work environment.   While Nnadozie has marshalled some evidence, prepared in the course of this litigation, which reflects her subjective belief that she was exposed to a hostile work environment, she fails to produce any objective evidence which might lead a reasonable person to find that the workplace environment was hostile on the basis of national origin discrimination.   *Fox,* 247 F.3d at 178.   In her Opposition, Nnadozie relies in large measure on her own declaration regarding the alleged harassment she suffered at her workplace.  (ECF No. 65, Ex. B.)  The other factual evidence on which Nnadozie relies serves only to undermine her own allegations.  Specifically, the deposition testimony of Denise Zimmerman (ECF No. 60-3, 60-4), Lisa Dezurn (ECF No. 60-36), and Mary Hochradel (ECF No. 60-10) directly contradicts Nnadozie's allegations regarding the creation of a list of African employees targeted for discipline by defendants.  What is more, the only piece of contemporary—that is, at the time of the alleged discrimination—evidence, Nnadozie's Individual Performance Improvement Plan amply documents Nnadozie's difficulties satisfying the demands of her position.[11]  (ECF No. 60-6.)  Recognizing that "[a] plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a *prima facie* case of discrimination," and considering the other record evidence produced by Nnadozie herself, this Court finds that Nnadozie has failed to raise a triable issue of fact

---

[11] The record before the Court suggests that any hostility in the workplace was attributable to performance-related concerns, rather than discriminatory conduct on the part of defendants.  *See* ECF No. 60-6.

regarding her hostile work environment claim and that defendants are entitled to summary judgment thereon. *Mackey v. Shalala*, 360 F.3d 463, 469–70 (4th Cir. 2004).

### 2.   Retaliatory Hostile Work Environment

Count II also alleges that the hostile work environment was also the result of retaliation for Nnadozie's having engaged in protected activity.  (ECF No. 1 at ¶ 247.)  While neither the Complaint nor the Opposition to Defendants' Motion for Summary Judgment specifies the nature of this protected activity, it appears that the contemplated protected activity is Nnadozie's complaint to Lisa Dezurn and Lee Ann Young about Denise Zimmerman's alleged list of targeted, African employees.  (ECF No. 65-2 at 69.)

Defendants argue that even if Nnadozie's communications with Dezurn and Young regarding Zimmerman's alleged discrimination were protected activity, Nnadozie fails to show that this activity "was the but-for cause of any subsequent adverse treatment she received."  (ECF No. 71 at 20.)

"To establish a *prima facie* case for retaliation, [the plaintiff] must be able to show that (1) he was engaged in protected activity, (2) the defendant acted adversely against him, and (3) that there was a causal connection between the first two elements."  *Noel v. United Parcel Serv., Inc.*, PWG-13-1138, 2014 WL 4452667, at *7 (D. Md. Sept. 9, 2014) (internal citation omitted).  The "causation element [ ] requires [the plaintiff] to demonstrate not only a causal connection between his opposition and his termination, but that his opposition was the 'but for' cause of that termination."  *Id.* at *8 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nasser*, —— U.S. ——, ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013)).

In this case, the only adverse employment action which Nnadozie suffered following her alleged protected activity was the issuance of the Final Written Warning ("FRW") regarding her work performance.[12]  (ECF No. 60-6.)  The record evidence before the Court, however, indicates that Nnadozie's protected activity is not the "but for" cause of the issuance of the FRW.  Rather, the FRW was issued only after a long history of written and verbal evaluations of Nnadozie's work performance dating from August 2009 through October 2010, including two Individual Performance Improvement Plans dated September 24, 2010 and October 10, 2010, respectively.  (ECF No. 33-5, Ex.'s 3, 12, 13.)  In light of this evidence, it cannot be said that Nnadozie's protected activity was the "but for" cause of the issuance of the FRW.  Accordingly, Nnadozie fails to demonstrate the causal connection between her alleged protected activity and the adverse employment action she suffered, and defendants are entitled to summary judgment on this Count.

## C. Constructive Termination (Count I)

This Court has explained that, "[t]he 'severe and pervasive' standard required to state a hostile work environment claim is lower than the 'intolerability' standard required for a constructive discharge claim." *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 783 (D. Md. 2010).  As plaintiff is unable to preclude summary judgment on her hostile work environment claim, so too does she fail as a matter of law to preclude summary judgment on her constructive discharge claim.  *Id.  See also Spencer v. Wal–Mart Stores, Inc.,* 469 F.3d 311, 317 (3d Cir. 2006) ("To prove constructive discharge, the plaintiff must demonstrate a

---

[12] There is no indication that the FRW was—or was intended to be—a termination notice.  To the contrary, it is entitled as an "Individual Performance Improvement Plan," and sets forth specific tasks and responsibilities which she needed to carry out in order to meet the demands of her position.  (ECF No. 33-5, Ex. 22.)  The fact that Nnadozie chose to resign after receiving the FRW does not render the end of her employment an adverse employment action caused by defendants.

greater severity of pervasiveness of harassment than the minimum required to prove a hostile work environment."); *Griffin v. Delchamps, Inc.,* 176 F.3d 480 (5th Cir. 1999) (same). Accordingly, defendants are entitled to summary judgment on Count I (Constructive Termination) of plaintiffs' Complaint.

### D. Retaliation (Counts III, IV, V, and VI)

In Counts III, IV, V, and VI, Nnadozie alleges a series of allegedly retaliatory acts on the part of defendants.  (ECF No. 1 at ¶¶ 250-80.)   As noted above, to prevail on a retaliation claim, the plaintiff "must be able to show that (1) he was engaged in protected activity, (2) the defendant acted adversely against him, and (3) that there was a causal connection between the first two elements." *Noel*, 2014 WL 4452667 at *7.  These claims are addressed in turn.

### 1.  Count III (Retaliatory Denial of Promotion)

In Count III, Nnadozie alleges that defendants retaliated against her by denying her request to be allowed to apply for a promotion.  (ECF No. 1 at ¶¶ 250-58.)  Defendants argue that this claim fails as a matter of law because (1) the alleged retaliatory conduct occurred prior to Nnadozie's alleged protected activity and (2) Nnadozie is unable to show that any similarly situated comparator was treated differently.   (ECF no. 33-1 at 72-73.) Defendant points to Nnadozie's deposition testimony, in which she admits that she is unaware of any other person who was allowed to apply for the promotion during her employment with defendants.  (Nnadozie Dep. Tr. 234-37, ECF No. 33-5.)  Nnadozie does not address this argument in her response in opposition to Defendants' Motion.  *See* ECF No. 65-2.

Plaintiffs' failure to identify any similarly situated persons outside of her protected class who were given the opportunity to pursue the promotion is fatal to Nnadozie's claim. *Byrd v. The Baltimore Sun Co.*, 279 F. Supp. 2d 662, 669 (D. Md. 2003), *aff'd sub nom. Byrd v. Baltimore Sun Co.*, 110 F. App'x 365 (4th Cir. 2004) ("Plaintiff's inability, at the close of discovery, to find a comparable situation in which a person outside the protected class was treated differently makes it impossible to raise an inference of impermissible discriminatory conduct on the part of the defendants under *McDonnell Douglas*."). Thus, defendants are entitled to summary judgment on Count III of plaintiffs' Complaint.

### 2.   Count IV (Retaliatory Interference with Prospective Employment)

Count IV alleges that defendants retaliated against plaintiff by interfering with her prospective employment opportunities. (ECF No. 1 at ¶¶ 259-67.) Defendants argue that this claim fails as a matter of law because Nnadozie's allegations are entirely unsubstantiated and are directly contradicted by record evidence. (ECF No. 33-1 at 73-75.) Defendants cite in support of their position Nnadozie's deposition testimony, in which she admits that she does not "know one way or the other whether the [allegedly retaliatory] conversation actually occurred." (Nnadozie Dep. Tr. 453-54, ECF No. 33-5.) Defendants also point to the testimony of Ruth Berenbach, who stated that she never spoke to any of Nnadozie's prospective employers about Nnadozie. (Berenbach Dep. Tr. 109-10, ECF No. 33-8.) Nnadozie does not address this argument in her response in opposition to Defendants' Motion. *See* ECF No. 65-2.

It is well established that "[c]onclusory and hearsay evidence does not provide support sufficient to defeat a summary judgment motion." *Mungro v. Giant Food, Inc.*, 187 F.

Supp. 2d 518, 523 (D. Md. 2002).  Here, Nnadozie offers no evidence *at all* to support this allegation.  In the absence of any evidence offered by plaintiffs to support Nnadozie's claim, defendants are entitled to summary judgment on Count IV of plaintiffs' Complaint.

### 3.   Count V (Retaliatory Assignment of Double Duties)

In Count V, Nnadozie alleges that defendants retaliated against her by imposing additional work duties upon her.  (ECF No. 1 at ¶¶ 268-76.)  Defendants argue that the assignment of additional duties is not, as a matter of law, an adverse employment action and, moreover, that the "additional" duties assigned to Nnadozie only served to equalize her workload to that of her peers.  (ECF No. 33-1 at 75-76.)  Nnadozie does not address this argument in her response in opposition to Defendants' Motion.  *See* ECF No. 65-2.

The Fourth Circuit has defined "adverse employment actions" as those that effect the terms, conditions or benefits of employment.  *Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 243 (4th Cir.1997), *cert. denied,* 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998).  District courts in this and other circuits have recognized that the imposition of additional work duties is not an "adverse employment action" under Title VII.  *See Johnson v. Aluminum Co. of Am.,* 397 F. Supp. 2d 688, 697 (M.D.N.C. 2005), *aff'd,* 205 F. App'x 152 (4th Cir. 2006); *Arnold v. Yale New Haven Hosp.,* 213 F. Supp. 2d 142, 151 (D. Conn. 2002).  Accordingly, defendants are entitled to summary judgment on Count V as a matter of law.

### 4.   Count VI (Retaliatory Imposition of Degrading Working Conditions)

Count VI alleges that defendants retaliated against Nnadozie by subjecting her to degrading working conditions by reassigning her to a downstairs office.  (ECF No. 1 at ¶¶ 277-80.)  Defendants argue that Nnadozie's claim is unsupported by established law and,

regardless, fails to qualify as a materially adverse employment action under Title VII.  (ECF No. 33-1 at 77.)  Nnadozie does not address this argument in her response in opposition to Defendants' Motion.  *See* ECF No. 65-2.  As previously noted, the Fourth Circuit has defined "adverse employment actions" as those that affect the terms, conditions or benefits of employment.  *Munday,* 126 F.3d at 243 (4th Cir.1997).  The Fourth Circuit has also declined to find such minor adjustments in employment accommodations to support retaliation claims.  *See Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (plaintiff unable to establish prima facie case of retaliation based on reassignment/imposition of alternative work schedule).  Accordingly, defendants are entitled to summary judgment on Count VI as a matter of law.

## III.  Plaintiff Ezeh's Claims Pursuant to Title VII

### A.  Claims Based on Race Discrimination (Counts VII and VIII)

The United States Court of Appeals for the Fourth Circuit has explained that "[i]n any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge."  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013).  In this case, defendants argue that they are entitled to summary judgment on plaintiff Ezeh's race discrimination claims because she failed to check the box for race discrimination and otherwise failed to make any allegations regarding racial discrimination in the Charge.  (ECF No. 33-1.)  Ezeh offers no response in opposition to defendants' argument.  *See* ECF No. 65-2.  Indeed, nothing in the Charge itself reflects race discrimination as a basis for Ezeh's Complaint.  (ECF No. 60-16.)  Thus, the race discrimination claims which Ezeh now alleges in this lawsuit are beyond the scope of

her EEOC Charge, and she has failed to exhaust her administrative remedies.  Accordingly, defendants are entitled to summary judgment on plaintiff Ezeh's race discrimination claims in Counts VII and VIII.

### B.  Hostile Work Environment – National Origin (Count VII)

#### 1.  Discriminatory Hostile Work Environment

Count VII alleges that plaintiff Ezeh was subjected to a hostile work environment on the basis of her national origin.  (ECF No. 1 at ¶¶ 281-89.)  Ezeh cites certain statements made by defendants during the course of Ezeh's employment as evidence of the hostile environment in the workplace.  (ECF No. 65-2 at 76.)  Defendants argue in their Motion that because plaintiff Ezeh fails to show that defendants' conduct was either severe or pervasive, defendants are entitled to summary judgment.  (ECF No. 33-1 at 80.)

As set forth above, "[i]n order to establish a *prima facie* case of hostile work environment harassment, a plaintiff must show: (1) that she was subjected to unwelcome conduct; (2) the unwelcome conduct was based on sex, race, color, national origin, or religion; (3) it was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis exists for imputing liability to the employer." *Khoury*, 268 F. Supp. 2d at 612.

Ezeh bases her hostile work environment claim on comments by Denise Zimmerman that "Africans are going to kill [Zimmerman]" and that Africans are "putting voodoo on [Zimmerman]." (ECF No. 62-1 at ¶ 2.)  Her claim is further based on two incidents when Ms. Zimmerman "screamed in [Ezeh's] face."  (*Id.* at ¶ 3.)  Ezeh further complains that defendants' human resources department's failure to adequately address these incidents

contributed to the hostile work environment.  (*Id.* at ¶¶ 4-5.)  Ezeh argues that under the Fourth Circuit's decision in *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015), even a single incident of discrimination is sufficient to allow a jury to find that a hostile work environment existed.

While Ezeh has marshalled some evidence, prepared in the course of this litigation, which reflects her subjective belief that she was exposed to a hostile work environment, she fails to present any objective evidence which might lead a reasonable person to find that the workplace environment was severely or pervasively hostile on the basis of her national origin.  *Fox,* 247 F.3d at 178.  As the Fourth Circuit has explained, "[a] plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a *prima facie* case of discrimination."  *Mackey*, 360 F.3d 463, 469–70 (4th Cir. 2004).  Moreover, while *Boyer-Liberto* does stand for the proposition that an "employee will have a reasonable belief that a hostile environment is occurring if the isolated incident is physically threatening or humiliating," Ezeh presents no evidence that Zimmerman's isolated comments were physically threatening or humiliating so as to establish a prima facie case of discrimination.[13] *Boyer-Liberto*, 786 F.3d at 284.  As plaintiff is unable to establish that the alleged discriminatory conduct was severe or pervasive, or, alternately, physically threatening or humiliating, defendants are entitled to summary judgment on this claim.

---

[13] While Ezeh did present for medical treatment subsequent to Zimmerman's alleged comments, her treating psychiatrist concluded that "[i]t is clear that [Ezeh's] current presentation and symptoms have resulted from the [HIV-Hepatitis C] blood exposure incident that occurred at her workplace and led to her current leave." (ECF No. 33-1 at 84.)

### 2. Retaliatory Hostile Work Environment

Ezeh also alleges that defendants caused the work environment to be hostile as retaliation for Ezeh's having engaged in protected conduct.  Although the nature of Ezeh's protected activity is not specified in the Complaint or in the Opposition to Defendants' Motion for Summary Judgment, it appears that the contemplated protected activity was Ezeh's notifying Lee Ann Young about Denise Zimmerman's alleged discriminatory conduct.  (ECF No. 65-2 at 77.)  Defendants argue that even if Ezeh's communications with Young regarding Zimmerman's alleged discrimination were protected activity, Ezeh fails to show that this activity "was the but-for cause of any subsequent adverse treatment she received."  (ECF No. 33-1 at 84-85.)

As noted above, "[t]o establish a *prima facie* case for retaliation, [the plaintiff] must be able to show that (1) he was engaged in protected activity, (2) the defendant acted adversely against him, and (3) that there was a causal connection between the first two elements." *Noel,* 2014 WL 4452667 at *7.  The "causation element [ ] requires [the plaintiff] to demonstrate not only a causal connection between his opposition and his termination, but that his opposition was the 'but for' cause of that termination." *Id.* at *8.

In this case, the only adverse employment action which Ezeh suffered following her alleged protected activity was the issuance of an Individual Performance Improvement Plan ("PIP") regarding her work performance.  (ECF No. 33-15, Ex. 14.)  The record evidence before the Court, however, indicates that Ezeh's protected activity is not the "but for" cause of the issuance of the PIP.  Instead, the record reflects that defendants previously had advised Ezeh of her deficient work performance in May 2011, *prior to* her complaints

regarding alleged discrimination.  (Hochradel Dep. Tr. 79-85, ECF No. 33-13.)  While the

PIP was not issued until after Ezeh's June 2011 complaint of discrimination, Ezeh was

already on notice of her deficient work performance at the time she made her complaint.[14]

Thus, it cannot be said that Ezeh's protected activity was the "but for" cause of the issuance

of the PIP.  As Ezeh fails to establish the causal connection between her alleged protected

activity and defendants' adverse employment action, defendants are entitled to summary

judgment on this Count.

### C. Discriminatory and Retaliatory Termination (Count VIII)

In Count VIII, plaintiff Ezeh alleges that defendants terminated her on the basis of

discrimination and retaliation.  (ECF No. 1 at ¶¶ 290-95.) The record evidence before this

Court, however, directly contradicts plaintiff's allegation that she was terminated.  To the

contrary, plaintiff's own resignation letter, dated October 28, 2011, states that "[a]s a result

of the unvarying directive to arrive at 7am which is unfeasible [sic] for me to accomplish at

this time, I want to transfer back to Genesis Staffing were [sic] it is feasible for me to work

the hours best for me and my family."  (ECF No. 33-15, Ex. 21 at 2.)  In light of this

evidence, plaintiff Ezeh fails to establish a prima facie case that she was terminated on the

basis of national origin discrimination or retaliation.

Plaintiff seeks to salvage this claim by asserting that Ms. Ezeh was somehow

"tricked" into resigning from her position with defendants.  (ECF No. 65-2 at 79.)  That is,

plaintiff Ezeh alleges that Mary Hochradel made false statements to Ezeh in order to induce

Ezeh to resign from her position with defendants.  Even if these allegations were credited,

---

[14] Nor, notably, was May 2011 the first time that Ezeh was informed of her deficient work performance: she was issued two PIPs in September 2010.  (ECF No. 33-15, Ex.'s 4, 6.)

Ezeh cites no authority for the proposition that her own decision to resign should be treated as a forced termination. In addition, absent a showing that defendants' actions were discriminatory or retaliatory, plaintiff fails to establish a prima facie case, and defendants are entitled to summary judgment on this claim.[15]

### D. Retaliation (Count IX)

While the Complaint states in a subheading that this count is based on defendants' assignment of "double duties" to Ezeh, the allegations set forth therein suggest the target of this count is <u>non-party Genesis Staffing, LLC</u>'s refusal to hire Ezeh following her resignation from employment with defendants. (ECF No. 1 at ¶¶ 296-308.) As Genesis Staffing, LLC is not a party to this suit, and as plaintiff has produced no evidence supporting the imposition of liability on defendants for Genesis Staffing, LLC's allegedly wrongful decision not to hire Ezeh, defendants are entitled to summary judgment on this claim.[16]

## IV.   Plaintiff Aina's Claims Pursuant to Title VII

### A. Hostile Work Environment – National Origin (Count XII)

In Count XII,[17] plaintiff Aina alleges that he was subjected to a hostile work environment on the basis of his African national origin. (ECF No. 1 at ¶¶ 309-17.) The

---

[15] To the extent that Ezeh attempts to frame this Count as based on constructive discharge, it also would fail, as Ezeh was unable to establish even the less exacting requirements of a hostile work environment claim. *See* ECF No. 65-2 at 82-83.

[16] Even if there were a basis for imposing liability on defendants, the record reflects that Genesis Staffing, LLC's decision not to hire Ezeh was based on her earlier violations of Genesis Staffing's attendance policy during her earlier tenure with that organization—and not as retaliation for her engaging in protected activity. (ECF No. 33-16 at ¶¶ 4-5.)

[17] The Complaint does not include sequentially number counts X and XI, but jumps from IX to XII. (ECF No. 1 at 33-34.)

Complaint points to certain mocking behavior by defendants and defendants' refusal to allow him to take an extended vacation in support of this allegation.  (*Id.*)

Defendants argue in their Motion that because plaintiff Aina fails to show that defendants' conduct was either severe or pervasive, defendants are entitled to summary judgment on Aina's hostile work environment claim.  (ECF No. 33-1 at 80.)   Though plaintiff Aina states in his Opposition brief that there exists direct evidence of defendants' discrimination, the Opposition contains no discussion at all of the facts on which Aina relies.  (ECF No. 65-2 at 85.)   Rather, Aina seems to seek to incorporate by reference the same evidence relied upon by co-plaintiffs Nnadozie and Ezeh.   (*Id.*)   Even accepting such evidence in support of Aina's claim, it remains, as set forth in detail above, insufficient to show that the alleged discriminatory conduct was severe or pervasive, or, alternately, physically threatening or humiliating, so as to establish a prima facie case of hostile work environment.   Accordingly, defendants are entitled to summary judgment on this claim.

### B.  Discriminatory/Retaliatory Termination (Count XIII)

As noted above, "[i]n any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge."  *Balas*, 711 F.3d at 407.   In this case, defendants argue that they are entitled to summary judgment on plaintiff Aina's discriminatory/retaliatory termination claims because Aina never mentioned his termination in his EEOC Charge of Discrimination.  (ECF No. 33-1 at 93.)   Aina offers no response in opposition to defendants' argument.   *See* ECF No. 65-2.  The record reflects that neither Ezeh's initial EEOC Intake Questionnaire dated June 18, 2011 nor his Charge of Discrimination dated March 21, 2012 makes any reference

whatsoever to his alleged discriminatory or retaliatory termination. (ECF Nos. 60-27, 60-26.) Nor is there any evidence that Aina ever amended his Charge after his termination from his employment. Thus, the allegations set forth in the Complaint regarding Aina's termination are outside the scope of his EEOC Charge, and he has failed to exhaust his administrative remedies. Accordingly, defendants are entitled to summary judgment on Count XIII (discriminatory / retaliatory termination) of the Complaint.

CONCLUSION

For the reasons stated above, all claims against defendants Genesis Healthcare Corporation and Genesis Health Care, LLC are DISMISSED; Defendants' Motion for Summary Judgment (ECF No. 33) is GRANTED; and judgment shall be ENTERED in favor of defendants Genesis Eldercare Network Services, Inc. and 9109 Liberty Road Operations, LLC on all counts.

A separate Order follows.

Date: January 31, 2017 _____/s/_____
Richard D. Bennett
United States District Judge